J-S17028-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DAYON WILLIE LUCAS | : | |
| | : | |
| Appellant | : | No. 1269 WDA 2022 |

Appeal from the Judgment of Sentence Entered October 7, 2022
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0001168-2021

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY OLSON, J.:          **FILED: September 6, 2023**

Appellant, Dayon Willie Lucas, appeals from the judgment of sentence entered on October 7, 2022, as made final by the denial of his post-sentence motion on October 17, 2022, following his jury trial convictions for aggravated assault, simple assault, and two counts of recklessly endangering another person (REAP).[1]  We affirm.

"The facts of this case stem from the assault of Israel Baker and Jonathon Roberts, which occurred in the early morning of April, [17] 2021 at Rockstarz Bar, located in Erie, Pennsylvania."  Appellant's Brief at 3

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1) (aggravated assault against Jonathon Roberts), 2701(a)(1) (simple assault against Jonathon Roberts), and 2705 (REAP against Jonathon Roberts and Israel Baker), respectively.  "Appellant was found not guilty of aggravated assault (against Israel Baker), aggravated assault with a deadly weapon, simple assault, and attempted homicide." Trial Court Opinion, 1/4/2023, at 1 n.1.

(quotations omitted). "The assaults took place as the result of an argument between two rival gangs, the Forty Gang, also known as 4 Nation, and the 1800 Gang, known as Sheed Nation." *Id.* The victims "who [we]re not members of the 1800 Gang, but ha[d] minor associations, were not part of the initial argument, but faced the brunt of the assault while trying to help their cousin[.]" *Id.* A three-day jury trial commenced against Appellant and three co-defendants on July 13, 2022. Appellant testified on his own behalf at trial and "repeatedly denied being a member of 4 Nation." *Id.* On July 15, 2022, a jury convicted Appellant of the aforementioned crimes. On October 7, 2022, "Appellant was sentenced to an aggregate [term] of 72 to 144 months [of] incarceration." Trial Court Opinion, 1/4/2023, at 1. Appellant filed a post-sentence motion on October 14, 2022. The trial court denied relief by order entered on October 17, 2022. This timely appeal resulted.[2]

On appeal, Appellant presents the following issues[3] for our review:

---

[2] Appellant filed a notice of appeal on October 26, 2022. On October 31, 2022, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant requested, and the trial court granted, an extension to file the Rule 1925(b) statement until after the trial transcripts were filed. Thereafter, Appellant filed a timely notice of appeal on November 30, 2022. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on January 4, 2023.

[3] Appellant identified another issue in his Rule 1925(b) statement pertaining to "a gang enhancement provision at sentencing" but he concedes that he did not raise that issue on appeal. *See* Appellant's Brief at 9 n.1. Appellant abandoned that issue and, therefore, it is waived. *See Commonwealth v. Felder*, 247 A.3d 14, 20 (Pa. Super. 2021) (citation omitted) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

1. [Whether t]he trial court erred in failing to grant [Appellant's] request for a judgment of acquittal on the [REAP] count regarding victim Baker, since the jury found [Appellant] not guilty of aggravated assault [against Baker] and the two verdicts were inconsistent[?]

2. [Whether t]he trial court erred in failing to grant [Appellant's m]otion [to dismiss] under [Pa.R.Crim.P.] 600, as the Commonwealth failed to bring the case to trial within the 365 day deadline [pursuant to] Rule 600[?]

3. [Whether t]he verdict in this case was against the weight of the evidence regarding the aggravated assault charge related to victim Roberts when it was clear from videos presented at trial that [Appellant] never used a deadly weapon and when [surveillance camaras captured his interaction with] Roberts and thus the jury conviction [] should be vacated[?]

Appellant's Brief at 9 (numbers supplied; footnote omitted).

In his first issue presented, Appellant contends that he is entitled to judgment of acquittal on his REAP conviction pertaining to victim Baker since the jury found him not guilty of aggravated assault regarding the same victim. *Id.* at 9-12. Appellant concedes that, while the two verdicts appear inconsistent, inconsistent verdicts are permissible so long as there is sufficient evidence to support his conviction. He suggests, however, that "the facts did not support the [REAP] conviction any more than [the facts] supported the aggravated assault charge." *Id.* at 10-11. Appellant maintains that the criminal information filed by the Commonwealth contained the exact same language in the factual basis to support both charges. *Id.* at 11. In sum, Appellant argues:

Specifically, the language in the aggravated assault charge, as related to Mr. Baker, stated that [Appellant] did "strike him with

- 3 -

a glass bottle and/or did kick him and/or did strike him multiple times as he lay on the floor as part of a group assault." The [REAP] charge uses the exact same language.

The jury found that [Appellant] did not intentionally cause or attempt to cause serious bodily injury to Mr. Baker, but they found that [Appellant's] actions placed Mr. Baker in jeopardy of serious bodily injury. The fact that there would even be no attempt to cause serious bodily injury but the [Appellant's] actions placed him in jeopardy of serious bodily injury suggests two different factual scenarios, while these charges were based on one factual scenario [and] where the video evidence itself never even showed [Appellant] striking Mr. Baker. Thus, the verdicts were so inconsistent that the trial court should have upheld the defense's request for a judgment of acquittal on the [REAP] count.

*Id.* at 11-12 (original brackets omitted).

Our Supreme Court has held that

the rule that controls the propriety of inconsistent verdicts is as follows:

Inconsistent verdicts ... are allowed to stand so long as the evidence is sufficient to support the conviction notwithstanding the defendant's acquittal on an accompanying charge. In determining whether there is sufficient evidence to support a conviction, "The appellate court must view all the evidence and all reasonable inferences drawn therefrom in the light most favorable to the Commonwealth, as verdict winner." *Commonwealth v. Weston*, 749 A.2d 458, 461 (Pa. 2000) (internal quotation marks omitted) (holding that a conviction of voluntary manslaughter did not abrogate the requisite intent for PIC or criminal conspiracy when there was sufficient evidence, notwithstanding the verdicts for the associated crimes, that the defendant armed himself prior to going to the victim's house, showing an intent to threaten or harm the victim).

*Commonwealth v. Moore*, 103 A.3d 1240, 1252 (Pa. 2014) (some quotations and citations omitted).

Moreover, our Supreme Court has recognized:

Whether the jury's verdict was the result of mistake, compromise, lenity, or any other factor is not a question for [an appellate court] to review.

[Instead, our Supreme Court] reaffirm[ed] that an acquittal cannot be interpreted as a specific finding in relation to some of the evidence, and that even where two verdicts are logically inconsistent, such inconsistency alone cannot be grounds for a new trial or for reversal.

*Commonwealth v. Miller*, 35 A.3d 1206, 1213 (Pa. 2012). There is no "special weight" afforded by an acquittal when arguing verdicts are inconsistent "because, by definition, one of the verdicts will always be an acquittal." *Id.*

Finally, this Court has previously determined:

A person commits REAP, a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury. 18 Pa.C.S.A. § 2705.

Reckless endangerment is a lesser included offense of aggravated assault[.] *Commonwealth v. Smith*, 956 A.2d 1029, 1036 (Pa. Super. 2008).

*Commonwealth v. Bullock*, 170 A.3d 1109, 1121 (Pa. Super. 2017) (quotations and original brackets omitted).

Here, the trial court determined "[t]here [was] no basis for [A]ppellant's assertion that it was inconsistent for the jury to find him guilty of [REAP] but not guilty of aggravated assault." Trial Court Opinion, 1/4/2023, at 1. The trial court noted that the *mens rea* requirements for the offenses are different.

- 5 -

*Id.* Finally, the trial court recognized that "assuming arguendo that the verdicts are inconsistent, such is not a basis to overturn a conviction." *Id.*

We agree with the trial court's assessment. Here, Appellant was convicted of REAP, a lesser included offense of aggravated assault. The jury concluded that there was sufficient evidence to support that conviction based upon the evidence presented by the Commonwealth at trial. Because the jury could have found that Appellant's conduct placed Baker in jeopardy of serious bodily injury, but that Appellant did not intentionally inflict or attempt to inflict serious bodily injury upon Baker under circumstances demonstrating extreme indifference to the value of human life, Appellant's acquittal for aggravated assault does not undermine his guilty verdict for REAP. Moreover, assuming the verdicts were inconsistent, we cannot interpret Appellant's acquittal for aggravated assault as a specific finding in relation to some of the evidence or give the acquittal special weight. As such, we conclude that there is no merit to Appellant's first claim.

In his second issue presented, Appellant argues that the Commonwealth failed to bring his case to trial within 365 days in violation of Pennsylvania Rule of Criminal Procedure 600 and, therefore, the trial court erred in failing to grant Appellant's motion to dismiss. Appellant's Brief at 12-15. More specifically, while conceding that there were "delays due to the pandemic," Appellant complains that he was tried 61 days after the Rule 600 deadline as the result of continuances requested by the Commonwealth. *Id.* at 12. Appellant assails the trial court's opinion that the delay was not attributable

to the Commonwealth "but instead on the fact that there were four co-defendants in this case and the '[trial c]ourt's schedule.'" *Id.* at 12. Accordingly, Appellant argues that the record belies the Commonwealth's claim that it "exercised due diligence in attempting to try this case within the required time period or that the trial court held any sort of hearing to determine the Commonwealth's reasoning for continuing the case." *Id.* at 14.

When presented with a speedy trial claim, our standard of review is well-settled:

> In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.

> The proper scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court must view the facts in the light most favorable to the prevailing party.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

> So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial

rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well. The Commonwealth bears the burden of proving, by a preponderance of evidence, that it acted with due diligence throughout the proceedings.

Rule 600 provides that "trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In computing the Rule 600 deadline, however, we do not necessarily count all time following the filing of the complaint. Rather, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). Rule 600 expressly excludes from computation periods of delay resulting from "any continuance granted at the request of the defendant or the defendant's attorney." Pa.R.Crim.P. 600(C)(3)(b). Continuances based on joint requests by the Commonwealth and the defendant are excludable time under this rule.

The Rule 600 analysis entails three steps:

First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600(D). As we have explained, Rule 600 encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date.

Addition of any Rule 600 extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth

does not bring the defendant to trial on or before the final
run date, the trial court must dismiss the charges.

***Commonwealth v. Reed***, 292 A.3d 601, 610–611 (Pa. Super. 2023)
(internal case citations and original brackets omitted).

In this case, the trial court "found that the Commonwealth had made numerous attempts to bring this case to trial and no undue delay was attributed to the Commonwealth." Trial Court Opinion, 1/4/2023, at 2. The trial court, instead, attributed the delays to the other three co-defendants and schedule management. ***Id.*** We discern no error or abuse of discretion.

Here, the Commonwealth filed a complaint against Appellant on April 22, 2021. Thus, the mechanical run date of this case was April 22, 2022, or 365 days later. On September 8, 2021, the trial court granted Appellant's request to continue the case until November 8, 2021. Those 61 days of delay are attributed to Appellant. Accordingly, the adjusted run date was June 22, 2022. Because the trial commenced on July 15, 2022, we apply the due diligence analysis set forth in Rule 600(D) to determine whether the period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence.

Initially, we note that Appellant concedes that there were courtroom scheduling difficulties due to the pandemic which cannot be attributed to the Commonwealth. Furthermore, upon our review of the record, we discern no undue trial delay or lack of due diligence by the Commonwealth. On March 14, 2022, citing the appointment of new counsel for a co-defendant who needed additional time for discovery and the trial court's prior denial of

severing the trials, the Commonwealth filed a motion for continuance and requested a new trial date so that all of the co-defendants could be tried together. The Commonwealth averred that there were no defense objections and asked "that all delays connected to [this] motion[] not be counted against the Commonwealth, as the Commonwealth is unable to try the cases in March, following the [o]rders of the [trial c]ourt regarding [s]everance." Commonwealth's Motion, 3/14/2022, at 1. On April 25, 2022, the Commonwealth filed another motion for continuance, averring that it had not received the results of DNA tests needed for trial, defense counsel did not object to the continuance, and "[t]here [were] no Rule 600 issues that would prevent this case from being moved to the June 2022 trial term." Commonwealth's Motion, 4/25/2022, at 1. Finally, on June 6, 2022, the Commonwealth requested a continuance because it was "having difficulty meeting the scheduling needs of all of the attorneys in this matter" and "limited judge/courtroom availability." Commonwealth Motion, 6/6/2022, at 1. Again, the Commonwealth averred that defense counsel did not object and there were no Rule 600 issues that would prevent this case from being moved to July. *Id.* From our review, we discern no undue delay and conclude that the Commonwealth exercised due diligence in bringing this case to trial. Because the trial court barred severance of the co-defendants' trials, the Commonwealth clearly had no choice but to seek continuances even when a single co-defendant was unavailable. As such, Appellant's Rule 600 claim lacks merit.

Finally, in his third appellate issue presented, Appellant claims that his conviction for aggravated assault pertaining to victim Roberts was against the weight of the evidence "as the record showed no evidence that [Appellant] had any sort of weapon with him." Appellant's Brief at 15-16. Appellant argues that the victim was the first aggressor and Appellant "was pulled down into a choke hold and had to move away from the situation, using [only] his hands to do so." *Id.* at 16. Appellant maintains that "[t]his action should not have been found by the jury to be criminal behavior, nor does it fit within the definition of aggravated assault[.]" *Id.*

Here, the trial court rejected Appellant's argument that his conviction for aggravated assault was against the weight of the evidence presented because he did not use a deadly weapon. Trial Court Opinion, 1/4/2023, at 2. The trial court noted that Appellant struck Roberts in the head with his fists and that Roberts suffered serious injuries as a result. *Id.* at 2. As such, the verdict did not shock the conscience of the trial court.

We employ the following standards:

> The weight given to trial evidence is a choice for the factfinder. If the factfinder returns a guilty verdict, and if a criminal defendant then files a motion for a new trial on the basis that the verdict was against the weight of the evidence, a trial court is not to grant relief unless the verdict is so contrary to the evidence as to shock one's sense of justice.

> When a trial court denies a weight-of-the-evidence motion, and when an appellant then appeals that ruling to this Court, our review is limited. It is important to understand we do not reach the underlying question of whether the verdict was, in fact, against the weight of the evidence. We do not decide how we would have ruled on the motion and then simply replace our own

- 11 -

judgment for that of the trial court. Instead, this Court determines whether the trial court abused its discretion in reaching whatever decision it made on the motion, whether or not that decision is the one we might have made in the first instance.

Moreover, when evaluating a trial court's ruling, we keep in mind that an abuse of discretion is not merely an error in judgment.

Rather, it involves bias, partiality, prejudice, ill-will, manifest unreasonableness or a misapplication of the law. By contrast, a proper exercise of discretion conforms to the law and is based on the facts of record.

***Commonwealth v. Barkman***, 295 A.3d 721, 737 (Pa. Super. 2023).

Here, the trial court did not err as a matter of law. ***See Commonwealth v. Burton***, 2 A.3d 598, 603 (Pa. Super. 2010) (affirming judgment of sentence for aggravated assault where defendant punched victim one time in head while victim was not looking, and victim was knocked unconscious), *appeal denied*, 32 A.3d 1275 (Pa. 2011). Moreover, the trial court's decision did not involve bias, partiality, prejudice, ill-will, or manifest unreasonableness. As such, we discern no abuse of discretion in denying Appellant's weight of the evidence claim.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/6/2023

- 12 -