J-S14008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ROBERT MOLITOR | : | |
| | : | |
| Appellant | : | No. 1303 EDA 2024 |

Appeal from the Judgment of Sentence Entered December 22, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s):  CP-23-CR-001179-2022

BEFORE:   DUBOW, J., BECK, J., and STEVENS, P.J.E.*

MEMORANDUM BY DUBOW, J.:                      **FILED JUNE 26, 2025**

Appellant, Robert Molitor, appeals from the December 22, 2023 judgment of sentence entered in the Delaware County Court of Common Pleas following his conviction of Aggravated Indecent Assault - Complainant Less Than 13 Years of Age, Indecent Assault - Complainant Less Than 13 years of Age, and Corruption of Minors.[1]  Appellant challenges the admissibility of text messages and asserts that the verdicts were against the weight of the evidence.  After careful review, we affirm.

We glean the relevant facts and procedural history from the trial court's opinion and the certified record.  The case involves Appellant's sexual abuse of his niece ("Child"), born in 2011.  During the relevant time, Child's father

---

* Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 3125(b), 3126(a)(7), and 6301, respectively.

("Father") had primary custody of Child, and they lived with Child's older brother ("Brother"), Father's fiancée ("Stepmother"),[2] and Stepmother's son. Child's mother ("Mother") had partial custody, which she exercised at her parents' ("Maternal Grandparents") home, where her brother, Appellant, also resided.

Child often played Fortnite, a video game, with Appellant in his third-floor bedroom at Maternal Grandparents' home as well online from Father's house. Child alleged that on one occasion while she was playing Fortnite in Appellant's room, Appellant snuck up on her and inserted his finger into her vagina under her clothes. While she did not initially report the abuse, at some point in 2021, Child, then 9 years old, disclosed the assault to Brother, then approximately 15 years old. Brother informed Stepmother and Father, who contacted the police.

On July 26, 2021, Jovanni Velez, the Director of the Delaware County Children's Advocacy Center ("CAC"), engaged in a recorded forensic interview of Child. During the interview, Child reiterated that Appellant snuck up on her while she was playing Fortnite in Appellant's room and inserted his finger into her vagina under her clothes. She additionally stated that this occurred on multiple occasions.

As part of the investigation, Father consented to a search of Child's phone, which revealed approximately 1,600 pages of text messages between

---

[2] While Father and his fiancée were not married at the time of trial, Child referred to Father's fiancée as her "stepmom."

Child and Appellant. The trial court summarized the messages as showing that Appellant and Child texted "in a manner befitting two [] smitten, young teens and bearing no resemblance" to what one "would see as appropriate between a [44-year-old] uncle and his [9-year-old] niece." Trial Ct. Op., 10/17/24, at 26-27. The text messages revealed that Appellant would instigate "frequent discord" with Child, prompting Child "to profusely apologize." *Id.* at 27. In one apology in regard to whether Appellant or Mother was a "better" Fortnite player, Child replied "I'm joking. I was joking. I'm sorry[,]" followed immediately by "I will hump you." *Id.* at 28; N.T., 9/26/23, at 262.

After numerous continuances, the trial court presided over a five-day jury trial from September 25-29, 2023. At trial, Child reiterated that Appellant put his finger "inside [her] private" while she played Fortnite on his bed and that he repeated the act other times. N.T., 9/26/23, at 74-76, 82-84. She testified that she could not remember other details. On cross-examination, the defense attempted to impeach Child with her prior testimony at the preliminary hearing where she testified that Appellant touched her with "his arm" rather than his finger. *Id.* at 97. On redirect, Child clarified that he used his finger. *Id.* at 107.

The defense also introduced a photograph of a note painted by Child, which read, "I'm sorry Robert[,]" implying that Child fabricated the allegations. *Id.* at 99. On redirect, the Commonwealth introduced a subset of the text messages in which Child apologized repeatedly to Appellant

- 3 -

regarding issues unrelated to the abuse allegation. *Id.* at 114. Appellant objected claiming that the texts exceeded the scope of cross examination. *Id.* The court overruled the objection, finding that Appellant had opened the door to their admission via the painted apology note. Relevantly, Child acknowledged that the text messages were between her and Appellant. *Id.* at 119-123.

The Commonwealth additionally presented the testimony of Father, Brother, and Stepmother, who testified to the facts set forth above. Father and Stepmother noted that Mother and Child had court-ordered phone calls while Child was in Father's custody. They explained, however, that the "bulk" of the calls were between Appellant and Child. Trial Ct. Op. at 30. Stepmother also testified to overhearing Appellant during an online game with Child say that "he just snuck her a kiss" when "nobody was looking[,]" which was their "little secret." N.T., 9/26/23, at 206-07. She additionally described seeing text messages in which Appellant asked Child to delete other messages. *Id.* at 207.

Father testified that, on a few occasions, Child returned from Mother's custody wearing no underwear and seemed "to be aggravated[.]" Trial Ct. Op. at 30-31. Father additionally acknowledged a 2019 CAC forensic interview of Child, initially stating that he did not know the reason for the interview; on cross-examination, however, he stated that documents relating to that interview named Appellant and Father as the potential perpetrators, but Father asserted that CAC ultimately "didn't find anything." N.T., 9/26/23, at

- 4 -

133, 152. Father also recounted that in approximately early-2020, Brother told him "that he had seen [Child] with her pants down, sitting on Robert's face." *Id.* at 138. Father asserted that he reported this incident to CYS, but CYS did not investigate the allegation.

Brother testified to the incident in 2020 and his report of the 2021 incident. On cross examination, he admitted that Maternal Grandmother prohibited him from coming to her house because he stole money from the house. *Id.* at 194-95.

Brian Knowlton, a digital forensic analyst for the Delaware County District Attorney's Office testified to extracting approximately 1,600 pages of text messages between Appellant and Child from Child's phone. Relevantly, at sidebar, defense counsel agreed that Analyst Knowlton did not need to acknowledge that each of the messages had been retrieved from Child's phone. *Id.* at 231-32.

Clifton Heights Police Sergeant Stephen Brown testified next regarding his investigation of the allegations beginning in June 2021. When the Commonwealth sought to introduce portions of the text messages, Appellant objected, asserting various bases, including lack of authentication. *Id.* at 251. The court overruled the objections, after which the Commonwealth presented several of the text messages through Sergeant Brown's testimony.

Finally, the Commonwealth presented CAC Director Velez, who testified regarding her forensic interview of the Child, which the Commonwealth played for the jury.

The defense presented the testimony of Mother and Maternal Grandmother, who both acknowledged that Child and Appellant often played Fortnite together, asserted that Child loved Appellant, and denied witnessing Child be upset by Appellant. N.T., 9/27/23, at 127-28, 141-42. Appellant additionally presented five character witnesses.[3]

On September 29, 2023, the jury convicted Appellant on all counts. On December 22, 2023, the trial court imposed on Appellant an aggregate sentence of 5 to 10 years of incarceration followed by 3 years of probation.[4] Appellant filed post-sentence motions, claiming, *inter alia*, that the verdict was against the weight of the evidence. The trial court denied relief on April 11, 2024.

On May 10, 2024, Appellant filed a notice of appeal. Appellant and the trial court subsequently complied with Pa.R.A.P. 1925.

Appellant presents the following issues on appeal:

I.     Did the trial court abuse its discretion in allowing into evidence and publishing to the jury text messages purportedly between [] Appellant and [Child] through investigator Stephen Brown over defense objection as they had not been properly authenticated?

II.    Did the trial court err in denying [] Appellant's motion for a new trial as when the improperly admitted text messages are excluded, the verdicts are against the weight of the evidence?

_____

[3] The Commonwealth and Appellant also presented experts regarding the behavior of child sexual assault victims.

[4] Based upon his convictions, Appellant is subject to Tier III requirements under the Sexual Offender Registration and Notification Act.

Appellant's Br. at 4.

In his first issue, Appellant claims that the trial court abused its discretion in admitting the text messages allegedly sent between Appellant and Child, asserting that the Commonwealth failed to authenticate the messages. *Id.* at 20-28.

As with other evidentiary questions, appellate courts review a trial court's determination regarding the authentication of text messages for abuse of discretion. *Commonwealth v. Reed*, 292 A.3d 601, 605 (Pa. 2023). "[A] trial court abuses its discretion only if it misapplies the law, or its exercise of judgment is manifestly unreasonable or the result of partiality, prejudice, bias or ill-will." *Commonwealth v. Nabried*, 327 A.3d 315, 321 (Pa. Super. 2024).

Pa.R.E. 901 governs the authentication of evidence and requires the proponent of the evidence to demonstrate that "the item is what the proponent claims it is." Pa.R.E. 901(a). The Rule specifically provides for the authentication of digital evidence, such as text messages, through the presentation of either "(A) direct evidence such as testimony of a person with personal knowledge; or (B) circumstantial evidence such as: (i) identifying content; or (ii) proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship." Pa.R.E. 901(b)(11).

While the proponent of digital evidence must "produce sufficient evidence to support a finding that a particular person or entity was the

author[,]" it need not demonstrate "that no one else could be the author." Pa.R.E. 901(b)(11), cmt. As this Court explained, "authentication of text messages turns upon the depth of direct and circumstantial evidence of authorship[.]" **Commonwealth v. Orr**, 255 A.3d 589, 601 (Pa. Super. 2021). Relevant circumstantial evidence of authorship includes "distinct linguistic phrases" used by the alleged author or specific information known only to the relevant parties. **Id.** at 600 (citation omitted).

We initially address whether Appellant preserved his objection to the text messages based on authentication. The trial court opined that Appellant waived this claim by failing to object based on authentication when the Commonwealth read a subset of text messages during Child's testimony, specifically Exhibit C23; by not objecting during Analyst Knowlton's testimony; and by not objecting to the Commonwealth's move to admit the exhibits at the close of its case. Trial Ct. Op. at 90-91.

We agree that Appellant waived his objection based on authentication in regard to Exhibit C23, the subset of text messages read into the record during Child's testimony.[5] However, we conclude that Appellant did not waive his authentication objection to the text messages contained in Exhibits C25-30 by failing to object during Analyst Knowlton's testimony. As noted, Analyst Knowlton's testimony addressed solely the extraction of the messages from Child's phone, a process which Appellant does not dispute. Instead, Appellant

_____

[5] Indeed, it appears that Appellant recognizes this waiver as he seeks relief as to "Exhibits [C]25-30," without mention of Exhibit C23. Appellant's Br. at 27.

preserved his authentication objection by raising it during Sergeant Brown's testimony addressing the content of the messages between Appellant and Child. Moreover, Pennsylvania's evidentiary rules clarify that Appellant did not need to renew his objection when the Commonwealth moved to admit the exhibits because he had previously preserved his objection. Pa.R.E. 103(b).

Turning to the merits, Appellant argues that the Commonwealth failed to authenticate the text messages because it did not prove that Child and Appellant authored the messages. Appellant's Br. at 20-28. He notes that the Commonwealth did not demonstrate that Appellant or Child had sole access to their phones. *Id.* at 26. Indeed, he asserts that Father had access to Child's phone and "had motive and opportunity to fabricate communication between" Appellant and Child, in light of the 2019 sexual abuse allegation against Father and his contentious custody dispute with Mother. *Id.* at 26-27. Appellant emphasizes that the Commonwealth did not introduce evidence confirming that the number associated with "Uncle Rob" on Child's phone was in fact his number. *Id.* at 27. Thus, he argues that this evidence is not sufficient for authentication of the text messages.

We reject Appellant's argument and instead conclude that the trial court did not abuse its discretion in overruling Appellant's objection. Trial Ct. Op. at 90-97. First, Child's testimony, which acknowledged the text conversations, provides direct evidence that the text messages were between her and Appellant, for purposes of Rule 901(b)(11)(A). N.T., 9/26/23, at 119-123. Moreover, the record includes ample circumstantial evidence in the form

of identifying content demonstrating Appellant and Child's authorship to satisfy Rule 901(b)(11)(B), including testimony recounting that Appellant and Child regularly texted each other. *Id.* at 71-72, N.T, 9/27/23, at 133. Additionally, Child's cell phone identified the contact as "Uncle Rob," and the messages referenced Appellant's role as "uncle," utilized a familial nickname by which Appellant called Child, and included substantial discussion of Fortnight, which they often played together. *Id.*, 9/26/23, at 120-24, 262-271; N.T. 9/27/23, at 38. Based on this evidence, we conclude that the trial court did not abuse its discretion in finding that the Commonwealth sufficiently authenticated the text messages.

In his second issue, Appellant seeks a new trial, claiming that the verdict was against the weight of the evidence. In reviewing a weight claim, this Court does not consider "the underlying question of whether the verdict is against the weight of the evidence," but rather reviews the trial court's exercise of discretion. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000). In so doing, we "give the gravest consideration to the findings and reasons advanced" by the trial court, which "had the opportunity to hear and see the evidence presented[.]" *Id.*

In addressing a weight claim, a trial court must consider whether, "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* at 752 (citations and internal quotation marks omitted). In other words, "a new trial should be awarded when the jury's verdict is so contrary

to the evidence as to shock [the trial court's] sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted).

Appellant asserts that each of his three convictions was against the weight of the evidence. Appellant's Br. at 28-30. His argument, however, is premised on the inadmissibility of the text messages, a claim which we rejected above. Appellant avers that without the text messages the jury would be left with "the almost completely unsubstantiated testimony" of Child, which he describes as "vague, with little detail as to when the alleged assault occurred or as to any of the attendant circumstances." *Id.* at 29-30. Appellant contends that either Brother or Father could have "planted a seed of a false allegation" such that the subsequent investigation and trial could have "transpired as it did." *Id.* at 30. Appellant notes that Brother, who was the first to report the assault, had shown Child pornography and allegedly stole money from Mother's family. *Id.* Appellant also reiterates that Father "had motive to fabricate evidence." *Id.* Thus, he argues that the "verdicts shock one's sense of justice[.]" *Id.*

After careful review of the record, including the text messages, we conclude that the trial court did not abuse its discretion in rejecting Appellant's weight claim. Trial Ct. Op. at 17-40. The trial court found that Child provided a "largely consistent" description of the assault at her forensic interview, during the preliminary hearing, and at trial. *Id.* at 33-34. The court rejected

the defense's suggestion that Father fabricated the allegations, opining that Child did not possess "the needed mental acuity" to repeat the same falsehoods "over the course of months to a professional forensic interviewer and before the jury, both outside the presence and direct influence of her father[.]" *Id.* at 36. Moreover, the court found Child's allegations "corroborated" by the "patently disturbing text messages of [a] sexualized nature[,]" which evidenced Appellant's "ongoing and varied emotional manipulation" of Child. *Id.* at 37. In light of this evidence, we discern no abuse of discretion in the trial court's conclusion that the verdict did not shock its conscience. *Id.* at 40. Accordingly, we affirm the judgment of sentence.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/26/2025