J-A24011-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS ZORRER | : | |
| | : | |
| Appellant | : | No. 1526 EDA 2022 |

Appeal from the Judgment of Sentence Entered January 19, 2022
In the Court of Common Pleas of Bucks County
Criminal Division at No: CP-09-CR-0002062-2019

BEFORE: STABILE, J., DUBOW, J., and SULLIVAN, J.

MEMORANDUM BY STABILE, J.: **FILED JUNE 14, 2024**

Appellant, Thomas Zorrer, appeals from his judgment of sentence of 18-40 years' imprisonment for attempted murder, persons not to possess firearms and multiple other offenses. We affirm.

On the morning of February 21, 2019, Appellant shot the victim, Kevin Hadley, in the ear with a 9 millimeter pink/purple handgun outside a trailer in Morrisville, Pennsylvania. Appellant was arrested that day and charged with attempted murder, persons not to possess firearms, and multiple other assault- and weapons-related offenses. The court severed the charge of persons not to possess firearms from the other charges, and on November 1, 2021, this charge went to trial. On November 4, 2021, a jury found Appellant guilty of this charge. On November 30, 2021, the remaining charges proceeded to trial, and on December 2, 2021, another jury found Appellant guilty of all charges. On January 19, 2022, the court imposed sentence.

Appellant filed timely post-sentence motions, which the court denied, and a timely notice of appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

The evidence during Appellant's first trial shows that near noon on February 21, 2019, a Falls Township police officer responded to the Belaire Mobile Home Park following a report of a shooting. Upon the officer's arrival, he observed the victim, Kevin Hadley, bleeding from his left ear. Hadley was transported to a local hospital for further treatment. Based on information that Hadley provided, the police began searching for a vehicle owned by Virginia Albertson, Appellant's girlfriend. Several hours later, the police located the vehicle at Albertson's address, found Appellant in the driver's seat of the vehicle, and arrested him. Upon taking Appellant into custody, a police officer recovered a single Speer 9mm Luger bullet in Appellant's front right pocket. The police also recovered a pink/purple Ruger 9mm handgun from the vehicle. Subsequent testing demonstrated that the gun fired a bullet and ejected a shell casing as a properly functioning firearm would do. The police obtained a DNA swab from Appellant. Expert witnesses testified for the Commonwealth that Appellant was the primary DNA contributor on the gun and had characteristic gunshot residue particles on his person. *See* Trial Court Opinion, 10/21/22, at 3-8 (citations omitted).

The evidence adduced during Appellant's second trial consisted largely of the same evidence submitted during the first trial. In addition, a detective testified that Appellant admitted taking the gun from his then-girlfriend,

- 2 -

Albertson, because of a purported fear that she would harm herself. Further, Appellant first expressed surprise that the victim, Hadley, had been shot at all, and then later in the interview, told detectives that it was all an accident, without conceding that he fired the gun at Hadley. Another detective testified that he intercepted several telephone communications in which Appellant made statements about the February 21, 2019 incident in which he said "I fucked up" and "it was an accident," along with surprise and frustration that police had discovered an item, which the Commonwealth argued was the 9mm firearm. **See** Opinion at 8-14.

Appellant raises the following issues in this appeal:

1. Did the trial court abuse its discretion in denying Appellant relief based on the Rules of Criminal Procedure Rule 600[?]

2. Did the trial court abuse its discretion in denying Appellant relief based on the Rules of Criminal Procedure Rule 600 as the trial court included continuances where Rule 106 was not adhered to as required[?]

3. Did the trial court err in failing to suppress DNA evidence of the gun and magazine as it was not covered by the four corners of the search warrant[?][1]

4. Did the trial court err in denying Appellant's Motion in Limine precluding any reference, during the person not to possess a firearm trial, of the shooting of a person, in particular, Kevin Hadley[?]

---

[1]Appellant did not address this issue in the argument section of his brief. Accordingly, it is waived. **Commonwealth v. Heggins**, 809 A.2d 908, 912 n.2 (Pa. Super. 2002) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived").

5. Did the trial court err in denying Appellant's Motion in Limine to admit the November 25, 2019 Bench Warrant transcript of Kevin Hadley[?]

6. Did the trial court err in instructing the jury "if you believe the Defendant intentionally used a deadly weapon on a vital part of the victim's body" when it was an ear that was injured[?]

7. Did the trial court err in denying Appellant's demur motion as the evidence produced by the Commonwealth was insufficient to sustain guilty verdicts beyond a reasonable doubt against the Appellant in both trials[?]

8. Did the trial court err in denying Appellant's request for a new trial, both the first and second trial, as the verdicts by both went against the weight of the evidence[?]

9. Did the trial court err in denying Appellant's request for a new trial based on Brady violations[?]

10. Did the trial court abuse its discretion in sentencing appellant by imposing manifestly excessive sentences, failing to consider all relevant factors, failing to adequately state the reasons relied upon and relying on improper factors in imposing said sentence[?]

In his first argument, Appellant contends that the trial court erred in denying his motion to dismiss all charges under Pennsylvania's speedy trial rule, Pa.R.Crim.P. 600. This argument is devoid of merit.

When presented with a speedy trial claim arising under Rule 600,

> our standard of review of a trial court's decision is whether the trial court abused its discretion. Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill will, as shown by the evidence or the record, discretion is abused.
>
> The proper scope of review is limited to the evidence on the record of the Rule [600] evidentiary hearing, and the findings of the

[trial] court. An appellate court must view the facts in the light most favorable to the prevailing party.

Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule [600] must be construed in a manner consistent with society's right to punish and deter crime. In considering [these] matters ..., courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

***Commonwealth v. Reed***, 292 A.3d 601, 610 (Pa. Super. 2023). The Commonwealth bears the burden of proving, by a preponderance of evidence, that it acted with due diligence throughout the proceedings. ***Id.***

Rule 600 provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). In computing the Rule 600 deadline, however, we do not necessarily count all time following the filing of the complaint. Instead, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the

computation of the time within which trial must commence. Any other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1).

In order for delay to count toward the 365-day deadline, the Commonwealth must cause the delay, and the Commonwealth must fail to exercise due diligence. Where the Commonwealth does not cause the delay, or delay caused by the Commonwealth does not arise from lack of diligence, it is excluded from computation of the Rule 600 deadline. "Due diligence is fact specific, to be determined case-by-case; it does not require perfect vigilance and punctilious care, but merely a showing the Commonwealth has put forth a reasonable effort." *Commonwealth v. Selenski*, 994 A.2d 1083, 1089 (Pa. 2010).

The Rule 600 analysis entails three steps:

First, Rule 600(A) provides the mechanical run date. Second, we determine whether any excludable time exists pursuant to Rule 600(C). We add the amount of excludable time, if any, to the mechanical run date to arrive at an adjusted run date.

If the trial takes place after the adjusted run date, we apply the due diligence analysis set forth in Rule 600([D]). As we have explained, Rule 600[] encompasses a wide variety of circumstances under which a period of delay was outside the control of the Commonwealth and not the result of the Commonwealth's lack of diligence. Any such period of delay results in an extension of the run date. Addition of any Rule 600[] extensions to the adjusted run date produces the final Rule 600 run date. If the Commonwealth does not bring the defendant to trial on or before the final run date, the trial court must dismiss the charges.

*Reed*, 292 A.3d at 611.

Here, the complaint was filed on February 22, 2019, so the mechanical run date was February 22, 2020. Appellant's first trial took place 983 days after the filing of the complaint, on November 1, 2021. The record demonstrates that there were 710 days of excludable time in this 983-day period, resulting in an adjusted run date of January 31, 2022. Thus, Appellant's first trial took place well within the adjusted run date.

To elaborate, there is no dispute that the first 223 days (February 22, 2019 to October 4, 2019) is attributable to the Commonwealth. The trial court found that this time was attributable to the Commonwealth, **see** Commonwealth's Brief at 19 and the Commonwealth does not contest this finding in its brief. **Id.** at 22.

The next 96 days from October 4, 2019 to January 8, 2020 were attributable to Appellant, thus constituting excludable time, because of Appellant's multiple requests to change defense counsel. The relevant facts during this time period were as follows:

[In February and March 2019,] Appellant was first represented by Deborah Weinman, Esq. of the Bucks County Public Defender's Office. Attorney Weinman had to withdraw as Appellant had previously filed a Post Conviction Relief Act ("PCRA") complaint in 2010 regarding a matter in which Attorney Weinman had represented him in, and in which he alleged there was ineffective assistance of counsel. William Penglase, Esq. was then appointed as Appellant's second attorney on March 21, 2019. [On October 4, 2019, as the] initial trial date of November 18, 2019 approached, Appellant requested that Attorney Penglase withdraw his representation [because] Appellant found his representation unsatisfactory. Attorney Penglase's withdrawal was accepted on November 10, 2019 and finalized in an order dated November 26, 2019, which replaced Attorney Penglase with Harry Cooper, Esq.

> The matter was then postponed until January 8, 2020 to allow Attorney Cooper to become familiar with the case and properly prepare.

Trial Court Opinion, 10/21/22, at 18 (cleaned up).

The time between the filing and resolution of the defendant's pretrial motions is not chargeable against the Commonwealth under Rule 600 if the motion delays trial and the Commonwealth exercises due diligence in opposing or responding to the motion. *Commonwealth v. Hill*, 736 A.2d 578, 587 (Pa. 1999). In addition, delay resulting from the appointment of new defense counsel is not chargeable against the Commonwealth under Rule 600. *Commonwealth v. McLaughlin*, 488 A.2d 63, 66 (Pa. Super. 1985). Nothing in the record demonstrates that the Commonwealth failed to exercise due diligence in responding to Appellant's October 4, 2019 motion to dismiss Attorney Penglase. To the contrary, the Commonwealth promptly filed a response to the motion on October 18, 2019, and the court granted this motion on November 10, 2019 and appointed Attorney Cooper on November 29, 2019. Moreover, the delay between November 29, 2019 and January 8, 2020 took place because Attorney Cooper needed this time to prepare for trial. Thus, the delay between October 4, 2019 and January 8, 2020 does not count against the Commonwealth under Rule 600. *Hill*, *McLaughlin*, *supra*.

The next time period from January 8, 2020 to March 17, 2020 was excludable because this delay arose from a joint request for a continuance. Opinion at 19. As we held in *Commonwealth v. Reed*, 292 A.3d 601 (Pa.

- 8 -

Super. 2023), "Rule 600 expressly excludes from computation periods of delay resulting from 'any continuance granted at the request of the defendant or the defendant's attorney.' Pa.R.Crim.P. 600(C)(3)(b).[2] Continuances based on joint requests by the Commonwealth and the defendant are excludable time under this rule." *Id.* at 611.

The next 470 days from March 17, 2020 to June 30, 2021 was excludable time because the court suspended jury trials during this period due to the COVID pandemic, a circumstance beyond the Commonwealth's control. In ***Commonwealth v. Faison***, 297 A.3d 810 (Pa. Super. 2023), we reasoned that on March 16, 2020, our Supreme Court declared a general statewide judicial emergency due to the COVID pandemic. The Court subsequently extended this emergency until June 1, 2020 and explicitly suspended time calculations under Rule 600 during this period. When the statewide emergency ended on June 1, 2020, the Court provided that any local emergencies would remain in effect and empowered local president judges to extend the judicial emergency in their own districts based on specific health concerns. Thus, in ***Faison***, we held that a 490-day delay in Delaware County due to extensions of the judicial emergency by Delaware County's president judge was not chargeable to the Commonwealth. *Id.* at 823-24. We

---

[2] The citation to Rule 600(C)(3)(b) appears to be a typographical error. The correct citation is to Rule 600(C)(2), which provides that "periods of delay caused by the defendant shall be excluded from the computation of the length of time of any pretrial incarceration."

explained that it would not further the purpose of Rule 600 "if a defendant could demand a jury trial (as is [his] constitutional right) during a time when it is impossible for the Commonwealth to hold a jury trial and determine that the resulting delay was not excusable under the Rule." **Id.** at 824; **see also Commonwealth v. Lear**, 290 A.3d 709, 719 (Pa. Super. 2023) ("[i]f an [emergency] order unambiguously suspends Rule 600 without qualification, then the period of suspension is added to the run date without considering the Commonwealth's diligence"), *appeal granted in part*, 305 A.3d 541 (Pa. filed October 3, 2023).

Similarly, in the present case, the record reflects that Bucks County's president judge extended the judicial emergency in Bucks County multiple times between June 1, 2020 and June 30, 2021. Nothing in the record suggests that Appellant was willing to waive his right to a jury trial during this time. Accordingly, this time period is not attributable to the Commonwealth under Rule 600. **Id.**

Next, the trial court held that the 75-day period from June 30, 2021 to September 13, 2021 was excludable time, Opinion at 20, and Appellant concedes in his brief that this decision was correct. Appellant's Brief at 26 ("On June 21, 2021, the trial court offered trial dates of August 30, 2021 or September 13, 2021. Before responses from the parties were received, Court Administration notified this Court that holding the trial on August 30, 2021 was not possible. As a result, the 75-day period from June 30, 2021 to

September 13, 2021 was beyond the Commonwealth's control and is not applied against [it] under [Rule] 600").

Finally, the court held that the Commonwealth was responsible for the 49-day period from September 13, 2021 to November 1, 2021 because its expert witnesses were not available during this time.

The foregoing analysis shows that 710 days between the filing of the complaint on February 22, 2019 and the first trial on November 1, 2021 were excludable from Rule 600, while only 273 days were attributable to the Commonwealth, leaving an adjusted run date of January 31, 2022. Appellant's first trial took place well within the adjusted run date.

In addition, Appellant's second trial began on November 30, 2021, well within the adjusted run date of January 31, 2022.

Appellant contends that Rule 600 requires dismissal of all charges because the Commonwealth was tardy in obtaining critical discovery. Appellant argues that the Commonwealth (1) failed to contact the investigating officer to request Appellant's GSR results until November 15, 2019; (2) failed to send Appellant's GSR kit to the Pennsylvania State Police for testing until November 18, 2019; (3) failed to obtain Appellant's GSR report until March 4, 2020; and (4) failed to analyze the GSR kit of the victim, Hadley, until February 12, 2021. In addition, Appellant asserts that the Commonwealth failed to request hospital records pertaining to Hadley until January 25, 2021. Furthermore, Appellant argues that the Commonwealth

failed to turn over Hadley's testimony during a bench warrant hearing on November 25, 2019 that Appellant was the "wrong guy," thus forcing Appellant to obtain the transcript from this hearing himself. All of these dates, however, fell within time periods that are not chargeable to the Commonwealth for the reasons discussed above (a defense request for new counsel, a joint request for a continuance and the COVID pandemic).

For these reasons, the trial court properly denied Appellant's Rule 600 argument.

Next, Appellant contends that the trial court erred in failing to dismiss his case under Rule 600 because it failed to follow Pa.R.Crim.P. 106 following each continuance request. We disagree.

Rule 106(c) provides:

When the matter is in the court of common pleas, the judge shall on the record identify the moving party and state of record the reasons for granting or denying the continuance. The judge also shall indicate on the record to which party the period of delay caused by the continuance shall be attributed and whether the time will be included in or excluded from the computation of the time within which trial must commence in accordance with Rule 600.

*Id.* Appellant appears to claim that during pretrial hearings, the court failed to state, on the record, the identity of the party responsible for delays caused by continuances and whether these delays were included in or excluded from Rule 600 computations.

Appellant arguably has waived this issue because his brief fails to identify where he raised Rule 106(c) in the trial court. Even if Appellant raised

this issue below, he fails to cite any case, nor can we find any, in which the court's failure to comply with Rule 106(c) required attribution of the continuance to the Commonwealth under Rule 600.  Finally, the Rule 1925 opinion in this case thoroughly explained its reasons for granting each continuance and for determining the party responsible for each continuance. Thus, even if the court failed to comply with Rule 106(c) during pretrial hearings, it remedied this error by providing a satisfactory explanation in its Rule 1925 opinion.

Next, Appellant argues that during his first trial for persons not to possess firearms, the court erred by denying his motion *in limine* to preclude evidence of the fact that the victim, Hadley, was shot.  According to Appellant, the Commonwealth did not need to prove that Hadley was shot in order to prove that Appellant was unlawfully in possession of a firearm, so therefore evidence of the shooting ran afoul of Pa.R.E. 403.  We disagree.

"The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.  "Unfair prejudice means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Rule 403, Comment.  "This balancing of intangibles—probative values against positive damages—is so much a matter where wise judges in particular

situations may differ that a leeway of discretion is generally recognized."

***Commonwealth v. Boyle***, 447 A.2d 250, 254 (Pa. 1982). "Evidence will not

be prohibited merely because it is harmful to the defendant."

***Commonwealth v. Dillon***, 925 A.2d 131, 141 (Pa. 2007). "[E]xclusion is

limited to evidence so prejudicial that it would inflame the jury to make a

decision based upon something other than the legal propositions relevant to

the case." ***Commonwealth v. Owens***, 929 A.2d 1187, 1191 (Pa. Super.

2007). "The court is not ... required to sanitize the trial to eliminate all

unpleasant facts from the jury's consideration where those facts are relevant

to the issues at hand and form part of the history and natural development of

the events and offenses for which the defendant is charged[.]"

***Commonwealth v. Lark***, 543 A.2d 491, 501 (Pa. 1988). We review the trial

court's decision to admit or preclude evidence for abuse of discretion.

***Commonwealth v. Hairston***, 84 A.3d 657, 664 (Pa. 2014).

The Crimes Code defines the offense of persons not to possess firearms

as follows:

> A person who has been convicted of an offense enumerated in subsection (b),[3] within or without this Commonwealth, regardless of the length of sentence, or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

---

[3] The parties stipulated that Appellant pled guilty to burglary and theft by unlawful taking in 2006, both of which are enumerated offenses under Section 6105(b).

- 14 -

18 Pa.C.S.A. § 6105(a)(1). In our view, evidence that Appellant shot the victim was relevant to demonstrate that he "possess[ed], use[d] [or] control[led]" a firearm. *Id.* In addition, the trial court acted within its discretion by concluding that this evidence was not more prejudicial than probative. The trial court correctly observed that "there [was] no obligation to sanitize the record, and the Commonwealth is entitled to tell its story, including the natural development of the events." Opinion at 26 (cleaned up). Evidence of the shooting, while unpleasant, clearly fit within the natural development of the events in this case. *See Commonwealth v. Antidormi*, 84 A.3d 736, 752 (Pa. Super. 2014) (in prosecution for persons not to possess firearms, evidence that firearms were discharged from vehicle occupied by defendant and others and damaged a home and signage was admissible; probative value of evidence outweighed its prejudice because it formed part of natural history of case, established that firearm existed and that defendant possessed it, and did not invite jury to convict on improper basis).

The court further neutralized the prejudicial impact of this evidence by instructing the jury that they should not consider whether the evidence indicated that Appellant was guilty of other crimes. At the start of trial, the court gave the following instruction:

> I want you to know that I expect that in the trial there may very well be testimony that's presented which might lead you to believe that [Appellant] might be guilty of another crime or two in terms of the Commonwealth's allegations against him as to when if he did in fact possess a firearm or used a firearm or controlled a firearm. You might hear testimony that might lead you to believe

that he was involved in some other activity. And when we get to that, you'll understand what I mean. But what I want to convey to you is this, it's very important that you realize we're only dealing with one crime here, one charge. And so, whether or not you hear things that make you think, oh, that sounds like that might be another crime or that might be another crime, they are of no moment or importance to you. To the extent that those matters ever have to be dealt with, they'll be dealt with separately in a different forum.

N.T. 11/01/2021, p. 27. The court gave a similar instruction following the close of evidence. N.T. 11/04/2021, at 258-59 (similar instruction). Juries are presumed to follow the court's instructions, **Commonwealth v. Tyson**, 119 A.3d 353, 360 (Pa. Super. 2015), and nothing in this record rebuts the presumption. Accordingly, we conclude that this instruction prevented the jury from finding Appellant guilty of persons not to possess firearms because it believed Appellant committed other crimes.

Next, Appellant argues that the court erred during his first trial by refusing to admit a transcript from Hadley's bench warrant hearing in which Hadley testified that "[Appellant] is not the guy who shot me." Appellant claims that the trial court should have admitted this testimony as an admission against interest under Pa.R.E. 804 because Hadley did not attend Appellant's first trial.[4] We review this decision for abuse of discretion, **Hairston**, **supra**, and we conclude that the court properly excluded this testimony.

_____

[4] Hadley testified during Appellant's second trial, and his bench warrant hearing testimony was introduced into evidence during his testimony.

The hearsay exception that Appellant seek to invoke, Pa.R.E. 804(b)(3), provides:

> (b) Hearsay Exceptions. The following statements, as hereinafter defined, are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> ***
>
> (3) Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. In a criminal case, a statement tending to expose the declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

*Id.* The plain language of this rule requires not only that the statement be against the declarant's interest but that the declarant be unavailable as a witness and that corroborating circumstances clearly indicate that the statement is trustworthy. A declarant is "unavailable as a witness" under Rule 804 when the declarant "is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure … the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)[(3)]." Pa.R.E. 804(a)(5)(B).

Although Hadley was absent during Appellant's first trial, Appellant fails to demonstrate that he was unable to procure Hadley's attendance or testimony. To the contrary, when the court asked defense counsel where Hadley was, counsel stated "I don't know," N.T. 11/4/21, at 118, and failed

to demonstrate that he attempted to subpoena Hadley or otherwise obtain his attendance or testimony, even though Hadley was equally available to both parties as a witness. Thus, there was no proof that Hadley was "unavailable as a witness."

Moreover, the trial court properly determined that there were no corroborating circumstances that clearly indicated the trustworthiness of Hadley's bench warrant hearing testimony. The trial court observed that the bench warrant hearing testimony directly contradicted Hadley's prior sworn testimony during Appellant's preliminary hearing, and there was no opportunity or reason for the Commonwealth to cross-examine Hadley during the bench warrant hearing. The court reasoned that Hadley's testimony was simply a disingenuous excuse for why he refused to appear in court under subpoena for Appellant's trial. Opinion at 29 (citing N.T. 11/4/21, at 115-17). Finally, the court noted that Hadley and Appellant knew each other well, thus undermining any notion that this was a case of mistaken identity. *Id.*

Since Appellant failed to demonstrate that Hadley's bench warrant hearing testimony met all requisites for admissibility under Rule 804(b)(3), the court properly declined to admit this evidence.

Next, Appellant argues that the trial court erred by giving the following instruction during his second trial, "If you believe that [Appellant] intentionally used a deadly weapon on a vital part of the victim's body, you may regard that as an item of circumstantial evidence from which, if you choose, you could

infer that [Appellant] had the specific intent to kill." N.T. 12/2/21, at 48. Appellant shot Hadley in his ear. He contends that the jury instruction was erroneous because the ear is not a vital part of the body. We disagree.

Our review of a challenge to the court's jury instructions is well-settled. We review the charge as a whole to determine if it is fair and complete. *Commonwealth v. Lake*, 281 A.3d 341, 347 (Pa. Super. 2022). "The trial court commits an abuse of discretion only when there is an inaccurate statement of the law. A charge is considered adequate unless the jury was palpably misled by what the trial judge said or there is an omission which is tantamount to fundamental error." *Id.*

Appellant was charged with attempted murder, a crime that requires the Commonwealth to prove that he took a substantial step towards the commission of a killing with the specific intent in mind to commit such an act. *Commonwealth v. Jackson*, 955 A.2d 441, 444 (Pa. Super. 2008). In accordance with this principle, the trial court instructed that the jury had to find that Appellant did an act—specifically, he "fired his gun at the victim"— he had the specific intent to kill Hadley at the time of this act, and the act constituted a substantial step towards the commission of the killing. N.T. 12/2/21, at 45-46. The court then instructed that it could infer specific intent if Appellant intentionally used a deadly weapon on a vital part of Hadley's body. *Id.* at 48.

Viewed as a whole, this instruction was fair and complete. The only objection Appellant raises Hadley's ear did not constitute a vital part of his body. We reject this argument for the reason given by the trial court:

> Appellant's issue seems to contend that using the phrasing "a vital part of the victim's body" was in error as the victim, Kevin Hadley, was injured in the ear — therefore [Appellant takes] the position that an ear is not a vital part of the body. Of course this argument ignores the idea that the ear is attached to the head, and certainly, it would seem, the head is a vital part of the body.

Trial Court Opinion, 10/21/22, at 33. The evidence shows that Appellant aimed toward Hadley and shot him in the ear. Under these circumstances, it was reasonable to instruct the jury that (1) it could conclude that Appellant was aiming not just towards Hadley's ear but towards his head—obviously a vital part of his body—and (2) it could infer from this detail that Appellant had the specific intent to kill Hadley.

Next, Appellant argues that the evidence was insufficient to sustain his convictions in both trials. The trial court held that Appellant waived this issue to the vagueness of his concise statement of matters complained of on appeal. For the same reason, the Commonwealth contends in its appellate brief that Appellant has waived this issue. We agree that this issue is waived.

Appellant asserts in his concise statement of matters complained of on appeal, "The evidence produced by the Commonwealth was insufficient to sustain guilty verdicts beyond a reasonable doubt against Appellant in both trials." Concise Statement, 9/6/22, at ¶ 7.

To preserve a challenge to the sufficiency of the evidence, "the Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient." *Commonwealth v. Widger*, 237 A.3d 1151, 1156 (Pa. Super. 2020). The failure to do so waives the claim for appellate review, even if the trial court correctly guesses which issues the appellant wanted to raise. *Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020).

In his first trial, Appellant was found guilty of persons not to possess firearms. His concise statement failed to specify which element of this offense the Commonwealth failed to prove. In his second trial, he was found guilty of attempted murder, aggravated assault (graded as a first degree felony), aggravated assault (graded as a second degree felony), carrying a firearm without a license, reckless endangerment, terroristic threats and possession of an instrument of a crime. Once again, his concise statement failed to specify which offense or which element the Commonwealth failed to prove. Thus, he waived his challenge to the sufficiency of the evidence.

Appellant next argues that the verdict in his first trial for persons not to possess firearms was against the weight of the evidence, because the only reason why he was in possession of a firearm was because he took a firearm from his girlfriend when she threatened to harm herself. The trial court properly rejected this argument.

A motion seeking a new trial based on the weight of the evidence is

addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054–55 (Pa. 2013).

As discussed above, Appellant stipulated that he was prohibited from possessing a firearm due to prior convictions for enumerated offenses under 18 Pa.C.S.A. § 6105. Therefore, the only issue for the jury was whether Appellant "possessed" the gun. The Commonwealth produced evidence that at the scene of the shooting, the police encountered the victim, who had been shot in the ear. Based on information from the victim, the police located Appellant's girlfriend's car, which Appellant was driving, and arrested him.

Police officers testified that they found a gun in the passenger door map pocket of the car, a gun holster in the center console compartment, and a loaded magazine for the gun in between the driver and passenger seat. N.T. 11/03/2021, at 163—72. The police tested the gun and found that it functioned normally. The Commonwealth produced expert witnesses who testified that Appellant was the primary DNA contributor on the gun and had "characteristic" GSR particles on his person. N.T. 11/03/2021, at 201—21; N.T. 11/04/2021, at 70—84. Given this substantial evidence of possession, the court acted within its discretion by denying Appellant's challenge to the weight of the evidence.

Appellant next contends that the verdict in his second trial was against the weight of the evidence. Appellant suggests that there was insubstantial evidence that any gun was fired, pointing to the fact that the police failed to find a spent cartridge. Appellant also claims that Hadley was a drug addict, had two convictions for *crimen falsi*, and did not attend Appellant's trial voluntarily.[5]

The trial court properly rejected Appellant's argument. To begin with, police recovered a live 9mm round at the crime scene. N.T. 11/30/2021, at 164—66. Detective Coffman testified that it is not uncommon in firearm investigations for police not to recover a shell casing or projectile. *Id.* at

---

[5] The Commonwealth procured Hadley's attendance and testimony through a material witness warrant.

167—68. Furthermore, there was evidence that a shooting took place. Detective Coffman testified that she spoke with Hadley in the ambulance at the crime scene. He was bleeding from his ear, yelling and crying. *Id.* at 162—63. The Commonwealth presented expert testimony, based on GSR and DNA evidence, that Appellant possessed and discharged the firearm that was involved in Hadley's shooting. Moreover, police found the firearm in a car that Appellant was driving at the time of his arrest. Lastly, Detective Coffman also conducted a recorded interview with Appellant that was admitted into evidence and played for the jury. Exhibit C-26. During the interview, Appellant admitted taking the gun from his girlfriend due to alleged fear that she would harm herself. *Id.* While Appellant first expressed surprise that Hadley had been shot, he later stated that it was all an accident. *Id.* Given this substantial body of evidence, the trial court acted within its discretion by denying Appellant's challenge to the weight of the evidence.

Next, Appellant argues that the Commonwealth committed a *Brady*[6] violation during his second trial by failing to inform Appellant and trial counsel that Hadley recanted his original story during his November 25, 2019 bench warrant hearing and by failing to inform Appellant that Hadley had an active warrant for his arrest as of November 11, 2021 for the charge of theft of

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

services, which, if known, would have been used to impeach Hadley during his testimony in Appellant's second trial.

To establish a **Brady** violation, Appellant had to show that "(1) evidence was suppressed by the state, either willfully or inadvertently; (2) the evidence was favorable to the defendant, either because it was exculpatory or because it could have been used for impeachment; and (3) the evidence was material, in that its omission resulted in prejudice to the defendant." **Commonwealth v. Willis**, 46 A.3d 648, 656 (Pa. 2012).

During his bench warrant hearing in November 2019, Hadley testified that Appellant was the "wrong guy." The trial court correctly determined that this testimony was not suppressed, since defense counsel referred to this testimony during pretrial proceedings in June 2021, months before Appellant's second trial, N.T. 11/4/21, at 119, and Appellant received a copy of the bench warrant transcript during both of his trials.[7]

The other alleged **Brady** violation concerns the Commonwealth's failure to notify Appellant of Hadley's alleged theft of services for failing to pay cab fare. The parties litigated this subject during a post-sentence hearing on May 20, 2022. The evidence adduced during this hearing demonstrates that sometime in November 2021, a cab driver notified the police that Hadley failed

---

[7] As discussed above, the court precluded this evidence during Appellant's first trial, but Appellant does not contend that any **Brady** violation took place during his first trial.

to pay a sixty-dollar cab fare on November 11, 2021.  On November 30, 2021, during Appellant's second trial, Hadley explained to an investigating police officer that he had taken the cab either to or from the hospital and thought the hospital would cover the charge as part of transportation.  The officer gave Hadley the phone number of the cab company and instructed Hadley to pay the bill, but Hadley failed to pay.  On December 7, 2021, after the conclusion of Appellant's second trial, Hadley was charged with theft of services.  Based on these facts, Appellant argues that the Commonwealth concealed evidence of Hadley's theft in violation of *Brady*, and had this evidence been disclosed, Appellant could have used it to impeach Hadley during his testimony in Appellant's second trial.

We agree with the trial court that this argument lacks substance.  The court determined that Appellant met the first *Brady* prong because the police inadvertently suppressed this evidence.  Opinion at 47 ("although this Court notes that the entire circumstances surrounding a $60 cab fare non-payment was not likely to call much attention inside a busy police department, especially when there was an opportunity for a simple and anticipated solution to just pay the outstanding debt, the Court is constrained to find that the Commonwealth did inadvertently fail to disclose this evidence to [Appellant], thus satisfying the first prong of the *Brady* test").  The court also determined that Appellant satisfied the second *Brady* prong because Appellant could have used this evidence to impeach Hadley during his testimony.

Nevertheless, the court reasoned that Appellant failed to satisfy the third

***Brady*** prong:

> [I]t is important to note that "the mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish materiality in the constitutional sense." ***Commonwealth v. Chambers***, 807 A.2d 872, 887 (Pa. 2002). "[E]vidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." ***United States v. Bagley***, 473 U.S. 667, 682 (1985). Moreover, and particularly relevant to the instant motion, "***Brady*** evidence may not be cumulative of other evidence." ***See Commonwealth v. Simpson***, 66 A.3d 253, 264 (Pa. 2013).
>
> Furthermore, to be entitled to a new trial based on the Commonwealth's failure to disclose information relating to witness credibility (*i.e.* impeachment evidence) a defendant must "demonstrate that the reliability of the witness may well be determinative of his guilt or innocence." ***See Simpson***, 66 A.3d at 266. The Pennsylvania Supreme Court has explained that where there is evidence that the Commonwealth has made an agreement or promise to a witness of leniency, facing charges or investigation, such evidence is relevant to that witness's credibility and the Commonwealth's failure to disclose this evidence may be a ***Brady*** violation. ***See Commonwealth v. Strong***, 761 A.2d 1167, 1172 (Pa. 2000). However, a "mere assumption that something such as a promise to assist in reducing" a witness's sentence does not establish a ***Brady*** violation. ***See Champney***, 832 A.2d at 412. Here there is no evidence, nor has the defense made any allegation that such a promise of leniency in return for testifying had been extended to Hadley. In fact, it was not until November 30, 2021—day one of Appellant's second trial—that [the investigating police officer] even became aware that Hadley had not paid back the $60. Thus, at the time trial started, Falls Township police were just then undertaking a formal criminal investigation.
>
> Furthermore, the addition of cross-examination of Hadley regarding this theft of services incident would have been merely cumulative of other impeachment evidence presented at trial.

During Hadley's testimony, defense counsel impeached Hadley with prior crimen falsi convictions for shoplifting and burglary tools. N.T. 12/01/2021, at 128—30; see also, D-6. Defense counsel also extensively cross-examined and impeached Hadley with his recantation under oath at the November 25, 2019 bench warrant hearing, which was inconsistent with his testimony in court on December 1, 2021. *Id.* at 131-147. As such, Hadley's credibility was impeached with two crimen falsi convictions and with a prior inconsistent statement made under oath. Moreover, in this Court's instructions to the jury, this Court gave the instruction of "false in one false in all", explaining to the jury that if they found a witness deliberately testified falsely about a material element or point in the case, then the jury was entitled to disbelieve the rest of that witness's testimony. N.T. 12/02/2021, pp. 41-42.

The issue of Hadley's credibility and whether to believe his statements at the November 25, 2019 hearing or his testimony on December 1, 2021, were issues for the jury to decide. ***See Crawford***, 718 A.2d at 772 ("The determination of the credibility of a witness is within the exclusive province of the jury). Ultimately, the jury found Hadley's testimony credible and convicted Appellant of all counts. Therefore, this Court finds that whatever impeachment value the addition of cross-examination on a pending of theft of services charge would have had, it cannot be construed as to have created a reasonable probability that the outcome of trial would have been different.

Trial Court Opinion, 10/21/22, at 48-49. We agree with this analysis and conclude that Appellant's ***Brady*** argument does not warrant relief.

In his final argument, Appellant contends that the court abused its discretion by (1) sentencing him to a total of 18-40 years' imprisonment, a total that Appellant calls manifestly excessive, (2) failing to consider all relevant factors, (3) failing to state adequate reasons for this sentence, and (4) taking improper factors into account.

"A challenge to the discretionary aspects of sentencing does not entitle

[Appellant] to review as of right." ***Commonwealth v. Bynum-Hamilton***, 135 A.3d 179, 184 (Pa. Super. 2016). To establish this Court's jurisdiction to address such a challenge, Appellant must satisfy a four-part test: (1) he preserved the issue by raising it at sentencing or in a post-sentence motion, (2) he filed a timely notice of appeal, (3) he set forth a concise statement of reasons relied upon for allowance of appeal, and (4) he raised a substantial question for this Court's review. ***Id.***

Here, as the Commonwealth points out, Appellant failed to challenge the discretionary aspects of his sentence either at the time of sentencing or in his post-sentence motion. Accordingly, he has waived this argument. ***Commonwealth v. Bradley***, 237 A.3d 1131, 1138-39 (Pa. Super. 2020).

For these reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/14/2024