J-S18021-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMES EARL HOWARD-GEORGE | : | |
| | : | |
| Appellant | : | No. 1247 WDA 2023 |

Appeal from the Judgment of Sentence Entered May 24, 2023
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001079-2021

BEFORE: PANELLA, P.J.E., McLAUGHLIN, J., and SULLIVAN, J.

MEMORANDUM BY McLAUGHLIN, J.: **FILED: September 4, 2024**

James Earl Howard-George appeals from the judgment of sentence entered following his convictions for statutory sexual assault, involuntary deviate sexual intercourse, indecent assault, and corruption of minors.[1] Howard-George challenges the sufficiency, weight, and admission of the evidence. We affirm.

The Commonwealth accused Howard-George of sexually assaulting H.T. ("the victim"). At the time of the sexual assault, which occurred on May 7, 2021, the victim was 15 years old. N.T., Trial, 12/7/22, at 33.

Before trial, the court addressed the Commonwealth's Rule 404(B) notice and Howard-George's motion to exclude the video recording of his interview with police. In its Rule 404(B) notice, the Commonwealth sought to

_____

[1] 18 Pa.C.S.A. §§ 3122.1(b), 3123(a)(7), 3126(a)(8), and 6301(a)(1)(ii), respectively.

"present evidence that [Howard-George] was dating and having an intimate relationship with another minor, HK, who was under the age of 18." N.T., Trial, 12/7/22, at 4. The court permitted the evidence. *Id.* at 5.

In his motion to exclude the interview video, Howard-George noted that in the recording, he was in jail attire and handcuffs. He argued that the jury seeing the video would be prejudiced. The court determined that a curative instruction would address any potential prejudice. *Id.* at 5.

At the jury trial, the Commonwealth presented the following evidence. C.H. testified that he attended a party along with at least 11 to 12 other people he described as "minors except for like three." *Id.* at 40. He testified that those in attendance were all around high school age. *Id.* at 41. C.H. stated that those in attendance were drinking alcohol and smoking marijuana. *Id.* at 43-44, 47. At some point during the party, Howard-George arrived and began drinking. *Id.* at 46. Besides Howard-George, C.H. testified that there was at least one other adult at the party, including a 19-year-old, who hosted the party. *Id.* at 42, 44, 75.

K.H. testified that she was 15 years old on the day of the incident. *Id.* at 49. She attended the party with the victim, C.H., and others. *Id.* She testified that most of the people attending the party were "like 17." *Id.* at 50. K.H. testified that during the party she "was under the influence of alcohol and weed, so, I don't really recall a lot." *Id.* at 51. She testified that in May 2021 she had a Snapchat account with a username containing her full name, "K*****H*******9." *Id.* at 50. Snapchat is "a social media platform for

sending pictures or videos." *Id.* at 58-59. Once these videos are sent from an account, they disappear. *See id.* at 59. While she did not remember sending any Snapchat videos the night of the party, she testified that she would not be surprised if videos from the party were sent from her Snapchat username. *Id.* at 50-51.

Detective Eric Klopfer testified that on May 12, 2021, he got involved with the case after receiving a Childline report of child abuse. *Id.* at 55, 56. He explained that the reported abuse was that a "student was intoxicated at a party and had sex with a[n] older male and another peer videotaped this." *Id.* at 56. Detective Klopfer was provided with names in connection to the incident which included the victim, K.H., and Howard-George. *Id.* K.H. had been identified as the peer who videotaped the incident. *Id.* Detective Klopfer also learned that at least six adults were present at the party. *Id.* at 75. Of the ages of the individuals Detective Klopfer was able to verify, Howard-George was the oldest in attendance. *Id.* at 76. Detective Klopfer spoke with Howard-George who told him that he did attend the May 7 party, where he was drinking, smoking, and rapping. *Id.* at 62. Howard-George told Detective Klopfer that he did not remember having sex with the victim and he did not refer to her age. *Id.* at 57, 75.

After sending a preservation request to Snapchat for videos from K.H.'s account and executing a search warrant for the release of the videos, Detective Klopfer retrieved videos of the sexual assault from K.H.'s Snapchat account. *Id.* at 58, 60. Before Detective Klopfer testified to the content of

these videos, counsel objected that the Commonwealth failed to authenticate the videos. The court overruled the objection. *Id.* at 62-63. The Commonwealth played the Snapchat videos and Detective Klopfer identified Howard-George, who was 27 years old at the time, the victim, M.P. who was 15 years old, C.H. who was 17 years old, Toby Magill who was 20 years old, and K.H. *Id.* at 65-66, 68. Detective Klopfer also identified a 12-year-old. *Id.* at 68. One of the videos sent from K.H.'s account showed the victim and Howard-George having sexual intercourse. *Id.* at 71-72.

Detective Chad Rensel testified that he assisted Detective Klopfer with Howard-George's interview. N.T., Trial, 12/8/22, at 9. He testified that Howard-George said that "he did not know [the victim] that well and he did not know her age." *Id.* at 13. He also testified that Howard-George never said that he thought the victim was older or that she told him she was older. *Id.* The Commonwealth admitted the video recording of Howard-George's interview into evidence. It was approximately an hour and 20 minutes. *Id.* at 19. During the interview, Howard-George made the following statements:

- I didn't know how old she was.

- I wouldn't be able to tell you [H.T.'s] age because I don't know [H.T.] at all like that so trust me I wouldn't be able to tell you her age to begin with, honestly, I don't know [H.T.] like that.

- I was only associated with [H.T.], you know, by some people of the people she was around or some of the people I was around, you know what I mean, other than basic associations. I don't know her that well. I don't really go around her for like, it's more like see her say

> "Hi," have a casual conversation. I go about my day, she goes about her day, I really don't know her.
>
> - Ya. I don't know really know her at all to be perfectly honest with you. I couldn't tell you her favorite color.

Memorandum Opinion and Order of Court, filed 9/22/23, at 2-3.[2]

In his defense, Howard-George presented testimony from the victim. She testified that about a month before the party, she told Howard-George that she was 18 years old. *Id.* at 31. The victim told her mother after the incident that she told Howard-George this information. N.T., 12/7/22, at 35. The victim testified that she attended school with Howard-George's girlfriend, who was a grade above her. N.T., 12/8/22, at 31-32. She testified that one to two months before the incident, she met Howard-George while in the company of her friends who were between 15 and 16 years old. *Id.* at 29, 30.

During its instructions to the jury, the court gave a cautionary instruction addressing Howard-George's police interview and the information regarding his 17-year-old girlfriend:

> Now, in the video you saw [Howard-George] in jail attire and in handcuffs. The attire of [Howard-George] in the video should not be used in deliberations regarding the facts of the case. [Howard-George's] relationship to a minor, HK, 17 years old, shall only be used in deliberations for the sole purpose of demonstrating knowledge of the victim's age demographic.

---

[2] The quotes from Howard-George's police interview are from the trial court's memorandum denying his post-sentence motion. The trial court quoted from different parts of the videotaped interview that was admitted at trial. The interview is not in the certified record.

*Id.* at 61-62. Howard-George did not challenge the adequacy of the cautionary instruction.

The jury found Howard-George guilty of statutory sexual assault, involuntary deviate sexual intercourse, corruption of minors, and indecent assault. The court sentenced Howard-George to an aggregate term of nine and one half to 19 years of imprisonment and ordered him to register as a sex offender under the Sex Offender Registration and Notification Act. Howard-George filed a post-sentence motion, which the trial court denied. This timely appeal followed.

Howard-George raises the following issues:

I.     Whether the trial court erred or abused its discretion in [denying the] motion to vacate or modify conviction and judgment of sentence for statutory sexual assault, involuntary deviate sexual intercourse, and indecent assault when the evidence presented at trial by the Commonwealth was qualitatively and quantitatively insufficient to overcome [Howard-George's] mistake of age defense?

II.    Whether the trial court erred or abused its discretion when it denied [Howard-George's] motion for new trial or to modify conviction and judgment of sentence for statutory sexual assault, involuntary deviate sexual intercourse, aggravated indecent assault, and indecent assault as the convictions were against the weight of the evidence due to [Howard-George's] defense of mistake of age?

III.   Whether the trial court erred in admitting video evidence from the night in question when said video was not properly authenticated?

IV.    Whether the trial court erred in admitting 404(b) evidence concerning [Howard-George's] relationship with a seventeen (17) year old female who was over

the age of consent in Pennsylvania, when the alleged vi[c]tim in the case at hand was below the age of consent?

V.     Whether the trial court erred in admitting video evidence depicting [Howard-George] in jail attire while he was handcuffed?

Howard-George's Br. at 9-10 (suggested answers omitted).

Howard-George's first and second issues challenge the sufficiency and weight of the evidence for his convictions for statutory sexual assault, involuntary deviate sexual intercourse, and indecent assault. For both issues, he claims that the Commonwealth failed to disprove his mistake-of-age defense. He maintains that the Commonwealth did not prove beyond a reasonable doubt that he did not reasonably believe that the victim was at least 16 years old. He notes that the evidence of his relationship with a 17-year-old "tends to show that [he] could have reasonably believed that the victim was the same age as his girlfriend[.]" *Id.* at 27. He further claims that the height and build of the victim could have led him to believe that she was at least 16 years old.

*Sufficiency of the Evidence*

When reviewing a challenge to the sufficiency of the evidence, we review whether the Commonwealth established every element of a crime beyond a reasonable doubt. *Commonwealth v. Forrey*, 108 A.3d 895, 897 (Pa.Super. 2015). Our standard of review is *de novo* and our scope is limited to the record evidence, which we view in the light most favorable to the Commonwealth as verdict-winner. *Id.*

- 7 -

An element of each of Howard-George's challenged convictions is a requirement that the complainant was under 16 years old. *See* 18 Pa.C.S.A. §§ 3122.1(b), 3123(a)(7), 3126(a)(8).

The mistake of age defense is governed by Section 3102 and provides:

> Except as otherwise provided, whenever in this chapter the criminality of conduct depends on a child being below the age of 14 years, it is no defense that the defendant did not know the age of the child or reasonably believed the child to be the age of 14 years or older. When criminality depends on the child's being below a critical age older than 14 years, it is a defense for the defendant to prove by a preponderance of the evidence that he or she reasonably believed the child to be above the critical age.

18 Pa.C.S.A. § 3102. Section 3102 places the initial burden on the accused to present a mistake-of-age defense. *See Commonwealth v. A.W.C.*, 951 A.2d 1174, 1178 (Pa.Super. 2008) (citing *Commonwealth v. Bohonyi*, 900 A.2d 877, 884 (Pa.Super. 2006)). Once the defendant proffers the defense, the burden shifts to the Commonwealth to disprove the defense. *Id.* at 1178-79.

Howard-George presented a mistake-of-age defense through the testimony of the victim that she told him that she was 18 years old, as well as other evidence. Therefore, the burden shifted to the Commonwealth to disprove the defense. On appeal, Howard-George stresses that he "repeatedly denied knowing [the victim's] age"; the testimony of victim's mother "that her daughter told the Appellant that she was [] 18 years of age"; his "consensual relation at the time of the incident with a 17-year-old girl"; the victim's appearance; and her testimony "that she had told [Howard-George] . . . that she was in fact 18 years of age[.]" Howard-George's Br. at 26-27.

The trial court determined that the Commonwealth had carried its burden, stating:

> The Commonwealth presented evidence which the jury could use to reach the conclusion that [Howard-George] did not reasonably believe that [the victim] was aged 16 or above at the time of the crimes. The Commonwealth presented Commonwealth's Exhibit "7", the video recording of the interview which took place approximately four (4) weeks after the incident. During the interview, [Howard-George] stated he didn't remember having sexual relations with anyone at the party on May 7, 2021. Once given the name of his accuser, he stated several times that he did not know [the victim] very well and that he did not know her age. He did, however, know that she was the younger sister of two (2) girls he did know, . . . who were 19 and 18, respectively, at the time of the crimes. At no time in the interview did [Howard-George] state that [the victim] told him that she was 18 years of age. [The victim's] mother, Tiffany Talbot, testified as to her daughters' ages. *N.T., Jury Trial on December 7, 2022, pg. 12.* The Commonwealth also presented testimony that [Howard-George's] girlfriend at the time was 17 years of age and that she went to school with [the victim]. In addition to this evidence, the jury was able to view the Snapchat videos of the crimes being committed.
>
> Det. Rensel testified that during the interview, [Howard-George] stated that "he did not know the victim well and that he did not know her age." *N.T., Jury Trial on December 8, 2022, pg. 13.* The detective also testified that [Howard-Goerge] did not say that he believed the victim was older and that the victim ever told him that she was older. *Id.*

Memorandum Opinion and Order of Court at 3.[3] The court further stated that "the question for the jury was whether the evidence presented by the

---

[3] On appeal, the trial court relies on its memorandum denying the post-sentence motion, in lieu of a Rule 1925(a) opinion. **See** Rule 1925(a) Opinion, filed 11/7/23.

Commonwealth was sufficient to prove that [Howard-George] could not *reasonably* believe the victim was 16 or older." *Id.* (emphasis in original).

Viewing the evidence in the light most favorable to the Commonwealth, as verdict winner, there was sufficient evidence to disprove Howard-George's mistake-of-age defense. As the trial court concluded, the Commonwealth presented sufficient evidence that Howard-George did not reasonably believe that the victim was 16 years or older. The victim testified that two months before the incident, she met [Howard-George] while in the company of her friends who were between 15 and 16 years old. At the time of the incident, Howard-George was in a relationship with a 17-year-old who attended the same school as the victim but was one year ahead of the victim. Moreover, when the assault occurred, Howard-George was in the company of minors, some of whom were 12, 15, and 17 years old. Additionally, during his interview with police, Howard-George admitted that he knew the victim was the younger sister of a 19- and 18-year-old. While Howard-George maintains that the victim's appearance impacted his belief of her age, considering all the evidence in the light most favorable to the Commonwealth, the evidence sufficiently disproved his mistake-of-age defense.

*Weight of the Evidence*

A weight claim is for the trial court in the first instance. **See Commonwealth v. Stiles**, 143 A.3d 968, 980 (Pa.Super. 2016). The trial court may sustain a weight challenge and grant a new trial only "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice

- 10 -

and the award of a new trial is imperative so that right may be given another opportunity to prevail." ***Commonwealth v. Clay***, 64 A.3d 1049, 1055 (Pa. 2013) (citation omitted). We review the trial court's rejection of a challenge to the weight of the evidence for an abuse of discretion. ***Commonwealth v. Windslowe***, 158 A.3d 698, 712 (Pa.Super. 2017).

Howard-George's weight argument relies on the same facts as his sufficiency claim. ***See*** Howard-George's Br. at 32. However, this evidence was counterbalanced by the evidence cited above that supported the jury's finding that Howard-George did not reasonably believe that the victim was 16 years old or older. On this record, we cannot say that the trial court abused its discretion in rejecting the weight claim.

*Admission of Evidence*

Howard-George's remaining issues challenge the admission of evidence. We review evidentiary rulings for an abuse of discretion. ***Commonwealth v. Brown***, 212 A.3d 1076, 1086 (Pa.Super. 2019). "An abuse of discretion exists where there is an overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Commonwealth v. Gross***, 241 A.3d 413, 418 (Pa.Super. 2020) (internal quotation marks and citation omitted).

Howard-George first claims that the Commonwealth failed to properly authenticate the Snapchat video. He argues that to do so, the Commonwealth had to "present direct evidence such as testimony of a person with personal

- 11 -

knowledge" or circumstantial evidence "that these videos accurately depicted the events of that night, were not edited, and were what they were purported to be." Howard-George's Br. at 34-35. He notes that K.H. did not remember taking the videos, did not identify the videos, and the Commonwealth never asked her if the videos were edited or if they showed what occurred at the party.

Rule 901 of the Pennsylvania Rules of Evidence governs the authentication of evidence. It provides that to authenticate an item of evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Pa.R.Evid. 901(a). Regarding digital evidence, including social media postings, "circumstantial evidence such as identifying content or proof of ownership, possession, control, or access to a device or account at the relevant time when corroborated by circumstances indicating authorship" will meet the requirement for authentication. *Id.* at 901(b)(11)(B)(ii) and comment. "Circumstantial evidence of content may be sufficient to connect the digital evidence to its author." *Id.* at comment.

Here, the trial court determined that the Commonwealth presented sufficient circumstantial evidence connecting the Snapchat videos to K.H. It pointed to the following evidence:

> [T]he Commonwealth called minor K.H. who testified that her Snapchat name was "K*****H*******9" at the time of the incident on May 7, 2021. K.H. testified that she was present at the party during which the incident in question occurred. She testified that she doesn't remember sending

Snapchat videos that night because she was drinking alcohol and smoking marijuana and that the incident occurred over a year ago. *N.T., Jury Trial on December 7, 2022, pgs. 48-50.*

On direct, the Commonwealth asked K.H., "Did you send any Snapchats that night? Answer: Um, I don't remember that happening. But obviously I think probably. I don't know. Question: If video came from Snapchat from that night, would you be surprised? Answer: No. Question: If there were videos of the party that you described, would you be surprised? Answer: No. Question: And why don't you remember sending specific snaps? Answer: I was under the influence of alcohol and weed, so, I don't really recall a lot." *Id.*

Butler City Police Detective Eric Klopfer testified at trial that through the investigation of this matter, he learned that K.H. used Snapchat to videotape the incidents at the party on May 7, 2021. He sent a preservation request to Snapchat for K.H.'s account with her username to preserve videos and photographs of the incidents in question. The detective testified that he followed the preservation request with a search warrant seeking the videos and photographs on K.H.'s Snapchat account from that evening. N.T., Jury Trial on December 7, 2022, pgs. 54-60. Commonwealth's Exhibit "2" is the preservation request sent to Snapchat for K.H.'s account and Commonwealth's Exhibit "3" is the search warrant sent to Snapchat for K.H.'s account.

At trial, the Commonwealth introduced video evidence contained in Commonwealth's Exhibit "4" and designated "1F" and "1G", which depicted [Howard-George] and the victim engaged in illegal behavior. Det. Klopfer testified that he identified K.H.'s voice on these portions of the video.

Memorandum Opinion and Order of Court at 5-6. We discern no abuse of discretion.

Howard-George notes that the Commonwealth never asked K.H. if the videos were edited or if they accurately depicted what occurred at the party. However, direct *or* circumstantial evidence will satisfy the authentication

requirement for digital evidence. **See** Pa.R.Evid. 901(b)(11). Through K.H.'s testimony, the Commonwealth presented sufficient circumstantial evidence of K.H.'s ownership, possession, control, or access to her Snapchat account at the time of the incident. The Commonwealth established that K.H. had an active Snapchat account on the day of the incident and that she was present at the party when the sexual assault occurred. The videos showing the assault were sent from a Snapchat account with the same username that K.H. identified as belonging to her. Although K.H. testified that she did not remember sending the videos, she admitted that she would not be surprised if videos from her account were from the night of the party.

Additionally, Detective Klopfer's testimony provided corroborating evidence of K.H.'s authorship of the videos. Detective Klopfer testified that when he initially received the Childline report, K.H. was identified as the peer who had videotaped the sexual assault. Following a preservation request and a search warrant, Detective Klopfer then recovered videos from the night of the party that showed the sexual assault of the victim. The Commonwealth properly authenticated the evidence. **See Commonwealth v. Reed**, 292 A.3d 601, 608 (Pa.Super. 2023) (concluding Commonwealth properly authenticated text message under Pa.R.Evid. 901(b)(11)(B)(ii) sent by defendant to victim where message was sent from defendant's phone that he possessed and controlled, message contained information that only defendant would have known, and victim testified about message sent by defendant).

- 14 -

Howard-George next claims that the court erred by admitting evidence of his relationship with his 17-year-old girlfriend. He claims that the evidence was prejudicial and was "admitted solely to prejudice the jury against [Howard-George]." Howard-George's Br. at 38.

Relevant evidence is admissible unless the probative value of the evidence is outweighed by unfair prejudice. **See** Pa.R.Evid. 402, 403. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.Evid. 403, comment (internal quotation marks omitted). "Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence . . . . Jurors are presumed to follow the trial court's instructions." **Commonwealth v. Tyson**, 119 A.3d 353, 360 (Pa.Super. 2015) (*en banc*).

The court determined that the challenged evidence "was relevant on the issue of establishing [Howard-George's] knowledge of the victim's age and that its probative value outweighed any potential for unfair prejudice." Memorandum Opinion and Order of Court at 7. This was not an abuse of discretion. The evidence was relevant to rebut Howard-George's mistake of age defense and any potential for unfair prejudice was cured by the court's curative instruction to the jury, which we presume the jury followed. **See** N.T., 12/8/22, at 62 (court's curative instruction to jury that Howard-George's relationship with a 17-year-old could be "used in deliberations for the sole

- 15 -

purpose of demonstrating knowledge of the victim's age demographic"); *Tyson*, 119 A.3d at 360.

Howard-George's final claim challenges the court's admission of his videotaped police interview showing him in jail attire and handcuffs. He notes that he was incarcerated on a different offense and that this was apparent to the jury because it was clear from the interview that he had not yet been arrested for the instant case.

Howard-George failed to include the videotaped interview in the certified record. This failure to ensure "that the original record certified for appeal contains sufficient information to conduct a proper review" of this issue constitutes waiver. *Commonwealth v. Manley*, 985 A.2d 256, 263 (Pa.Super. 2009) (citation omitted). Nonetheless, even if Howard-George had not waived this issue, we would reject his claim as meritless. The trial court gave a cautionary instruction regarding the video and Howard-George does not claim that the instruction was insufficient to cure any potential prejudice. We therefore affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

J-S18021-24

DATE:  9/4/2024